Gary BENTON, Appellant,

v.

Roger CRITTENDEN, Judge, Franklin Circuit Court, Appellee,

and

Commonwealth of Kentucky (Real Party in Interest), Appellee.

Commonwealth of Kentucky, Appellant,

v.

Gary Benton, Appellee.

Nos. 97–SC–1075–MR, 98–SC–263–DG.

Supreme Court of Kentucky.

Dec. 16, 1999.

Rehearing Denied April 20, 2000.

Kevin M. McNally, McNally & Robinson, Frankfort, Karen Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Warren N. Scoville, Scoville, Cessna, & Associates, London, for Gary Benton.

A.B. Chandler, III, Attorney General, Frankfort, Larry Wayne Cleveland, Cleveland & Ayer, Frankfort, Matthew D. Nelson, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Commonwealth of Kentucky.

Opinion of the court by Justice COOPER.

Gary Benton was indicted by a federal grand jury for the offenses of "carjacking," 18 U.S.C. § 2119, and use of a firearm during a crime of violence, 18 U.S.C. § 924(c). A trial by jury resulted in a general verdict of not guilty. Benton was subsequently indicted by a Franklin County, Kentucky, grand jury on charges of murder, kidnapping and robbery in the first degree, all arising out of the same incident which gave rise to the federal indictment. The Franklin Circuit Court dismissed the indictment for murder as barred by collateral estoppel, KRS 505.050(2), but denied a motion to dismiss the indictments for kidnapping and robbery. The Commonwealth appealed the dismissal of the murder indictment and Benton petitioned for a writ to prohibit a trial of the kidnapping and robbery indictments. Both issues are now before this Court on discretionary review of the Commonwealth's appeal, CR 76.20, and on direct appeal from the denial of Benton's petition for a writ of prohibition, Ky. Const. § 115.

## I. FACTS.

On the evening of December 16, 1995, Doyle and Rhenda Mills and Rhenda's father, William Bonner, had been shopping at the Wal–Mart store in Frankfort. Upon their return to the Millses' 1990 Buick LeSabre sedan automobile, which was parked in the Wal–Mart parking lot, an African–American male brandishing a pistol forced his way into the back seat next to where Bonner was seated. The gunman forced Doyle Mills to drive around Franklin and Shelby Counties for approximately an hour. During the trip, Mr. Mills overheard the gunman tell Bonner, "I told you not to look at me, I told you not to look at me." Eventually, the gunman ordered Mills to stop at a secluded location on Woodlake Road where he took the car keys from Mills and ordered Mr. and Mrs. Mills and Bonner to get out of the vehicle and start walking down an adjacent hill. The three became separated in the darkness. Mr. and Mrs. Mills both testified that they overheard the gunman complaining that he could not find the car keys and that Mrs. Mills responded that there was an extra set of keys in her purse. Shortly thereafter, both Millses heard a sound like the jingling of keys, then a single gunshot, following which the gunman departed the scene in their vehicle. The Millses subsequently found Bonner dead of a single gunshot wound to the head. Neither Doyle nor Rhenda Mills ever saw the face of the person who kidnapped and robbed them, though they were able to describe his physique. Neither could specifically identify Gary Benton as the gunman.

However, there was substantial circumstantial evidence that Benton was indeed the person who kidnapped and killed Bon-

ner and kidnapped and robbed Doyle and Rhenda Mills. A ballistics expert testified that the fatal bullet was fired from a 9–mm pistol owned by Frank Warfield. Warfield testified that he had loaned the weapon to Benton two days before the murder. There were witnesses who saw Benton driving a Buick LeSabre on the night the Millses' vehicle was stolen, and others who heard Benton say he obtained the vehicle "at Wal–Mart." Warfield, D'Von Jago, and Damon Stroud all testified that Benton admitted to them that he had carjacked the Millses' vehicle and killed Bonner. Stroud testified that Benton said he killed Bonner because Bonner had "looked at him" as he was getting out of the car. Benton's physique is similar to that of the gunman described by Mr. and Mrs. Mills. A latent fingerprint and a palm print found inside the Millses' vehicle matched prints taken from Benton.

Benton's defense was an alibi. His version was that Warfield carjacked the 1990 Buick LeSabre, then used the vehicle to give Benton a ride home, thus explaining how Benton's finger and palm prints came to be in the Millses' vehicle.

The carjacking statute, 18 U.S.C. § 2119, provides:

Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury (as defined in section 1365 of this title . . .) results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

Pursuant to these provisions, the federal jury was instructed as follows with respect to Count One of the indictment:

Title 18 United States Code, Section 2119, makes it a crime for anyone, with the intent to cause death or serious bodily harm, to take or attempt to take a motor vehicle which has been transported, shipped, or received in interstate commerce from the person or presence of another by force and violence or by intimidation.

For you to find the defendant guilty of this crime, alleged in Count One of the Indictment, you must be convinced that the government has proved each of the following beyond a reasonable doubt.

FIRST: That on December 16, 1995, the defendant, Gary Benton, took or attempted to take a motor vehicle from the person or presence of Mr. Bonner and Mr. and Mrs. Mills;

SECOND: That the defendant did so by force, violence, or intimidation;

THIRD: That the defendant intended to cause death or serious bodily harm;

FOURTH: That prior to the taking of the motor vehicle by the defendant, the vehicle had been transported in interstate commerce;

FIFTH: That the defendant acted knowingly and intentionally.

. . . .

The term "interstate commerce" means commerce or travel between one state, territory or possession of the United States and another state, territory or possession of the United States, including the District of Columbia. Commerce includes travel, trade, transportation, and communication.

Doyle Mills testified that he and his wife had purchased the Buick LeSabre new from Jim Cooke Buick in Louisville, Kentucky. An employee of that company pro-

duced a factory invoice which reflected that the vehicle had been shipped to Jim Cooke Buick from General Motors Corporation, Flint, Michigan.

18 U.S.C. § 924(c) is a penalty enhancement statute which provides for increased penalties if a crime of violence or a drug trafficking crime is committed while the person convicted was in possession of, brandished, or discharged a firearm. *Id.* § 924(c)(1). Carjacking is a "crime of violence" under this statute. *Id.* § 924(c)(3). The jury was instructed separately under Count Two as to this penalty enhancement statute, including an instruction that "you cannot convict under Count Two unless you have found the defendant guilty under Count One." Since the jury returned a general verdict of "not guilty," they never reached the enhancement instructions of Count Two.

The Franklin Circuit Court indictment charged Benton with the intentional or wanton murder of Bonner, the kidnappings of Bonner and the Millses, and the first-degree robbery of Mrs. Mills (relating to the theft of her purse).

## II. DOUBLE JEOPARDY.

■ The United States of America and the Commonwealth of Kentucky are separate sovereigns. Under the dual sovereignty doctrine, the mere fact that Benton was tried and acquitted in federal court does not preclude his prosecution in the Franklin Circuit Court even if both prosecutions involved the same conduct and the same offenses. *Koon v. United States,* 518 U.S. 81, 112, 116 S.Ct. 2035, 2053, 135 L.Ed.2d 392 (1996); *Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Nor does section 13 of the Constitution of Kentucky preclude Benton's subsequent prosecution on pure double jeopardy grounds, since the offense for which Benton was tried in federal court and each of the offenses for which he was indicted in

the Franklin Circuit Court require proof of an element which the others do not. KRS 505.050(1)(a); *Commonwealth v. Burge,* Ky., 947 S.W.2d 805, 811 (1996), *cert. denied sub nom., Effinger v. Kentucky,* 522 U.S. 971, 118 S.Ct. 422, 139 L.Ed.2d 323 (1997). The only remaining issue is whether the Franklin Circuit Court indictments are barred by the doctrine of collateral estoppel as embodied in KRS 505.050(2).

## III. COLLATERAL ESTOPPEL.

■ The seminal case on the application of collateral estoppel to a criminal prosecution is *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In that case, six men who were engaged in a poker game in the basement of a private residence were robbed by several masked men. Ashe was indicted and acquitted of the robbery of one of the poker players. He was subsequently indicted and convicted of the robbery of another of the poker players. The United States Supreme Court held that the second trial was precluded by the principle of collateral estoppel as embodied in the Fifth Amendment proscription against double jeopardy. The test to be applied was stated as follows:

Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury *could have grounded its verdict* upon an issue other than that which the defendant seeks to foreclose from consideration [in the subsequent proceeding]."

*Id.* at 444, 90 S.Ct. at 1194 (emphasis added). In *Ashe,* there was no evidence that the robbery did not occur; thus, the first jury must have grounded its verdict upon a belief that Ashe was not a participant in the robbery. The only distinguishing issue between the first and second

trials was the identity of the victim; and a rational jury could not have believed that Ashe did not participate in the robbery of one of the poker players, but did participate in the robbery of another. Thus, to subject Ashe to a second trial for the same robbery was double jeopardy.

In *Commonwealth v. Hillebrand*, Ky., 536 S.W.2d 451 (1976), we considered the holding in *Ashe* in the context of whether evidence of prior conduct for which a defendant had been previously acquitted was admissible as a "prior bad act" [now *see* KRE 404(b)(2) ] in a subsequent trial for similar conduct. *Hillebrand* held that *Ashe* only precluded evidence of issues that *"must have been decided"* against the Commonwealth at the previous trial. *Id.* at 453 (emphasis added).[1] This holding is in accord with KRS 505.040(2) and KRS 505.050(2), which contain identical language barring a subsequent prosecution following an acquittal in a former prosecution of a different offense:[2]

> The former prosecution was terminated by [in] a final order or judgment which has not subsequently been set aside and which *required* a determination inconsistent with any fact necessary to a conviction in the subsequent prosecution. (Emphasis added.)

█ These statutes and our holding in *Hillebrand* are in accord with the test enunciated in *Ashe, supra*, as well as the United States Supreme Court's post-*Ashe* decisions in *Dowling v. United States, supra*, n. 1, 493 U.S. at 350–51, 110 S.Ct. at 673 that the burden is on the defendant to demonstrate that the issue whose relit-

igation he seeks to foreclose was *"actually decided"* in the first proceeding, and *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) that once an issue is *"actually and necessarily determined"* by a court of competent jurisdiction, that issue is conclusive in a subsequent action involving a party to the prior litigation. (Emphasis added.) If a fact was not "necessarily determined" in the former trial, the possibility that it may have been decided does not preclude reexamination of the issue. *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir. 1997), *cert. denied*, 522 U.S. 934, 118 S.Ct. 341, 139 L.Ed.2d 265 (1997); *United States v. Lee*, 622 F.2d 787, 790 (5th Cir.1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981); *see also State v. Acevedo*, 632 So.2d 1130 (Fla.Dist.Ct.App. 1994) ("[t]he burden is on the defendant to prove by convincing and competent evidence that the jury necessarily decided the issue sought to be foreclosed"); *People v. McHugh*, 126 Misc.2d 116, 481 N.Y.S.2d 222, 225 (N.Y.Sup.Ct.1984) ("[c]ollateral estoppel lies only when a Court can point with certainty that the issue in question was necessarily determined in a prior proceeding").

Benton argues that because his only defense at the carjacking trial was an alibi, the federal jury must have necessarily decided that he was not the person who carjacked the Buick LeSabre, thus that he could not have been the person who kid-

---

1. The United States Supreme Court has since held that an acquittal in a criminal case does not preclude introduction of evidence of the same conduct in a subsequent trial as a "prior bad act" under FRE 404(b), because Rule 404(b) evidence is relevant if the jury merely believes by a preponderance of the evidence that the act occurred and the defendant was the actor. *Dowling v. United States*, 493 U.S. 342, 348–49, 110 S.Ct. 668, 672, 107 L.Ed.2d 708 (1990) (*citing Huddleston v. United States*, 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988)). Although *Hillebrand*

may have unnecessarily applied a higher standard to the introduction of Rule 404(b) evidence, its interpretation of the holding in *Ashe v. Swenson* is at least applicable to the normal collateral estoppel scenario represented by the facts of this case.

2. KRS 505.040(2) applies to a former prosecution in this jurisdiction. KRS 505.050(2) applies (as here) to a former prosecution in another jurisdiction.

napped and murdered Bonner, kidnapped Mr. and Mrs. Mills, and stole Mrs. Mills's purse. We disagree. Regardless of Benton's alibi defense, the government was still required to prove every element of the offense. There were at least two other possible bases for the jury's general verdict of not guilty. The jury could have believed that Benton did not form the intent to cause the death of Bonner until after he had already stolen the Millses' automobile, *i.e.*, after he took the keys from Doyle Mills and ordered the occupants out of the vehicle. Or the jury could have believed that the government presented insufficient evidence to prove beyond a reasonable doubt that the Buick had been transported in interstate commerce.

"Since it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case, it is a rare situation in which the collateral estoppel defense will be available to a defendant." *United States v. Tramunti*, 500 F.2d 1334, 1346 (2d Cir.1974), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974); *United States v. Cioffi*, 487 F.2d 492, 498 and n. 8 (2d Cir.1973), *cert. denied sub nom., Ciuzio v. United States*, 416 U.S. 995, 94 S.Ct. 2410, 40 L.Ed.2d 774 (1974). In *Ashe v. Swenson*, the first jury could not have rationally grounded its verdict upon a belief that Ashe did not participate in the robbery of one poker player, but did participate in the robbery of another. However, the federal jury in Benton's carjacking case could have rationally grounded its verdict on an issue other than whether Benton was the person who forced his way into the Millses's vehicle on the night of December 16, 1995.

Benton asserts that our holding in this case is directly contrary to the holding in *Smith v. Lowe*, Ky., 792 S.W.2d 371 (1990). There, the defendant (Smith) and others were accused of ambushing two coal trucks engaged in interstate commerce. One of the drivers died from wounds received in the attack. Smith was first indicted and tried by federal authorities on charges that he willfully, with intent to endanger the safety of any person on board, or with a reckless disregard for the safety of human life, disabled, or attempted to disable, a motor vehicle used, operated or employed in interstate commerce. 18 U.S.C. §§ 33, 34. Smith was acquitted of the federal charge under a general "not guilty" verdict. He was then indicted by a Pike County, Kentucky, grand jury for the murder of the truck driver. Against a claim of collateral estoppel, the Commonwealth argued that the federal jury could have found Smith not guilty because it did not believe the government had proven beyond a reasonable doubt that the coal truck was being operated in interstate commerce at the time of the shooting. A majority of this Court found that argument to be "more theoretical than real" and concluded that the federal jury acquitted the defendant because they did not believe he was involved in the shooting. 792 S.W.2d at 374–75.

In concluding solely on the basis of supposition that the federal jury acquitted Smith on the substantive issue rather than the jurisdictional one, the Court in *Smith v. Lowe* ignored the "necessarily determined" requirement established by the federal courts and the "must have been decided" standard enunciated in *Commonwealth v. Hillebrand, supra*. In fact, the opinion in *Smith v. Lowe* completely ignored *Hillebrand*, which was the controlling state precedent on this issue. Finally, instead of assigning the burden of proof of the issue to the defendant, the Court in *Smith v. Lowe* simply made a finding of fact premised upon what it assumed was the most likely basis for the jury verdict: "[I]t is obvious that the federal jury acquitted Paul Smith because it simply did not believe Irvin Smith." 792 S.W.2d at 374. Trial lawyers and trial judges who deal with juries on a daily basis know that

seldom is anything "obvious" about a general verdict of a jury, and that it is naive to assume that a jury decided a particular case on the issue which received the most attention at trial. That is particularly true in a criminal case where the Commonwealth has the burden to prove every element of its case beyond a reasonable doubt and the defendant is not required to prove anything at all.

█ *Smith v. Lowe* was a significant departure from and an unwarranted extension of the rule enunciated in *Ashe v. Swenson, supra.* We now overrule *Smith v. Lowe* and reinstate the standard established in KRS 505.050(2) and *Commonwealth v. Hillebrand, supra, viz:* the principle of collateral estoppel precludes a subsequent prosecution only if the defendant proves that the decision in the former prosecution *required* a determination inconsistent with any fact necessary to his conviction in the subsequent prosecution, *i.e.,* the first jury *must have decided* the first case on an issue necessary to convict in the subsequent case.

Because Benton did not meet that burden of proof in this case, we affirm the denial of his petition for a writ of prohibition in 97–CA–2233, reverse the dismissal of his indictment for murder in 97–CA–1175, and remand this action to the Franklin Circuit Court for further proceedings on the merits of the indictment.

GRAVES, KELLER and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion, with LAMBERT, C.J., and JOHNSTONE, J., joining that dissent.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. I strenuously object not only to the result reached by the majority in this case, but also to its decision to overrule *Smith v. Lowe,* Ky., 792 S.W.2d 371 (1990). Far from being an "unwarranted extension" of *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), *Smith* demonstrates

precisely the kind of common sense inquiry which the United States Supreme Court urged in its *Ashe* analysis. There, the Court stated:

> The federal decisions have made clear that the rule of collateral estoppel in criminal cases *is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.* Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.*

*Ashe,* 397 U.S. at 443–44, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76 (emphasis added) (internal citations omitted).

The precise issue which Benton seeks "to foreclose from consideration" in the case(s) at bar, is whether Benton was the person who committed the horrendous acts against the Millses and Mr. Bonner. In order to determine whether the jury in the federal case could have acquitted Benton for any reason other than its disbelief (or, rather, lack of belief beyond a reasonable doubt) that Benton was the perpetrator, we must look to the record of the federal trial which is now before us. As stated above, our inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Id.*

397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 476.

After reviewing the portions of the transcript of the federal trial, along with the federal indictment and jury instructions, it is clear to me that the jury in the federal trial simply did not believe beyond a reasonable doubt that Benton was the perpetrator. The transcript clearly reflects that the sole issue in dispute at the federal trial was the identity of the perpetrator. The defense did not contradict the Millses' version of the events they suffered on that tragic night, but rather merely established that neither survivor got a good look at their assailant, and that neither could identify Benton as the man who rode with them in the vehicle for over an hour. Furthermore, the testimony of Benton's "friends," who stated that Benton had confessed committing the crime to them, was full of contradictions. Moreover, several of these friends had access to the gun which killed Mr. Bonner, to the Millses' car, and to the car which the Millses identified as belonging to their assailant, and several had accepted a deal from the prosecution in exchange for their testimony against Benton.

The jury instructions in the federal trial required the jury to find each of the following beyond a reasonable doubt before convicting Benton:

FIRST: That on December 16, 1995, the defendant, Gary Benton, took or attempted to take a motor vehicle from the person or presence of Mr. Bonner and Mr. and Mrs. Mills;

SECOND: That the defendant did so by force, violence or by intimidation;

THIRD: That the defendant intended to cause death or serious bodily harm;

FOURTH: That prior to the taking of the motor vehicle by the defendant, the vehicle had been transported in interstate commerce;

FIFTH: That the defendant acted knowingly and intentionally.

Based on the Millses' uncontradicted testimony at trial, there can be no doubt that the events described in the first, second and fifth instructions were easily proven. Someone clearly took their car, by force, violence and intimidation, and did so knowingly and intentionally.

Similarly, after hearing the testimony of the medical examiner who testified that Mr. Bonner was shot in the head at close range, the jury could not have doubted that the perpetrator intended to cause Mr. Bonner's death or serious bodily harm, as required by the third instruction. Contrary to the majority's analysis of this issue, the instructions in this case did not require the jury to find that Benton formed the intent to cause Mr. Bonner's death *before* stealing the Millses' car.

Lastly, given the fact that the defense did not cross-examine the car dealer who established that the Millses' car had been shipped through interstate commerce, there can be little doubt that the fourth instruction was proven to the jury's satisfaction. The Commonwealth argues it is quite possible the jury simply did not understand the importance of the car-dealer's testimony in establishing the interstate commerce element set forth in instruction number four, and thus acquitted Benton because it did not believe this element was proven beyond a reasonable doubt. The majority opinion latches on to this ridiculous notion as its basis for denying Benton his requested relief, simply on the ground that "trial lawyers and trial judges ... know there is seldom anything 'obvious' about a general verdict of a jury." In the instant case, nothing could be further from the truth.

What rational jurist could believe that the jury, although convinced that Benton abducted these people at gunpoint, drove them around for hours, shot one of them in the head, then left the others on a deserted road while he took off in their car, acquitted the man because it simply did not believe the car had been transported in interstate commerce? To so conclude would be to ignore completely the com-

mon-sense approach dictated by *Ashe* and deftly applied in *Smith.*

Benton was tried and acquitted by a U.S. District Court jury. The only disputed issue in that trial was whether Benton committed the crimes. By acquitting Benton of the crime charged, the jury resolved that issue. In other words, the jury concluded that Benton didn't do it, or at least that the prosecution had failed to prove beyond a reasonable doubt that Benton did it. This issue of fact is the crux of all three subsequent state court charges and it is the quintessential fact "necessary to a conviction in the subsequent prosecution." What matters is that the issue of identity has been resolved once in Benton's favor, and he may not be forced to defend against that issue a second time. The bedrock principle of double jeopardy protection, codified in KRS 505.050(2), prohibits Benton's trial in Kentucky state court after his acquittal for the same criminal conduct in federal court.

Accordingly, I would affirm the trial court's dismissal of the murder charge, and grant the writ prohibiting the trial court from proceeding on the charges of kidnaping and robbery.

LAMBERT, C.J., and JOHNSTONE, J., join.