**Larry ORDWAY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2009–SC–000479–MR.**

Supreme Court of Kentucky.

Sept. 22, 2011.

---

586

Thomas More Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for Appellant.

Jack Conway, Attorney General, John Paul Varo, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, for Appellee.

## OPINION OF THE COURT

Appellant was tried and convicted of a string of robberies, burglaries, and thefts occurring in Christian County during the summer of 2007. One of the robberies occurred at the Ideal Market. The Hopkinsville Police originally began investigating Appellant following a burglary at the Ideal Market which happened prior to the robbery. An anonymous call was made to the Crimestoppers line which implicated Lillian Quarles and a male named "Larry" in that burglary. Police interviewed Quarles, who admitted to burglarizing the store. When asked about a robbery that had occurred at the Ideal Market days after the burglary, Quarles responded that the crime sounded like Appellant's "MO."

Further investigation led Detective Clayton Sumner to prepare an affidavit for a search warrant of the apartment of Dawn Turnley, Appellant's girlfriend. During the subsequent search, officers found a revolver in a bedroom dresser drawer, along with Appellant's wallet containing his social security card and other identification. The officers also collected various articles of dark-colored clothing, ammunition, bolt cutters, a sledge hammer, and two keys to ATVs. A stolen truck was found behind the apartment building and it was seized.

Turnley was subsequently arrested and interviewed by Detective Sumner. She confessed to three robberies, as well as a number of burglaries, and implicated Appellant in each. Appellant was thereafter indicted on three counts of robbery in the first degree, possession of a handgun by a convicted felon, ten counts of burglary in the third degree, wanton endangerment in the first degree, knowingly receiving stolen property over $300, seven counts of theft by unlawful taking over $300, and nine counts of criminal mischief in the third degree.

The possession of a handgun by a convicted felon charge was tried separately. The jury acquitted Appellant of this charge. A subsequent trial on the remaining charges followed. The primary witnesses were Dawn Turnley; Lillian Quarles; and Joshua Quarles, Lillian's husband.

The first robbery occurred at the Kangaroo Express Pantry store. Turnley testified that she and Quarles drove the geta-

way car while Appellant conducted the robbery. She also testified that Appellant wore dark clothing and a black tee-shirt tied around his head, revealing only his eyes. Store attendant, Benjamin Kaminski, also testified, explaining that a man wearing dark clothing entered the store and pointed a gun at him. Before taking money from the register, the robber hit Kaminski with the gun several times. At trial, Kaminski identified Appellant by his eyes.

The second robbery occurred at a BP station. Both Lillian and Joshua testified that Lillian drove the two men to the service station around 10:00 p.m. Both men were wearing dark clothes and their faces were covered. The store clerk was walking to her car around 10:15 p.m. when two men dressed in black told her to get back in the store. One of the men had a gun and threatened to shoot her. She unlocked the door, turned off the alarm, and gave the men all the cash contained in the store registers. Joshua testified that Appellant carried the gun.

The final robbery occurred at the Ideal service station. Turnley testified that she drove Appellant to the service station at about 4:30 a.m. and waited in the car for the store to open. Appellant was dressed in dark clothing with his face covered. The Ideal manager testified that a man dressed in all black grabbed him as he approached the store, pointed a gun at his head, and threatened to kill him if he didn't open the store immediately. Because the locks had been changed due to the recent burglary, the manager was unable to open the door. According to the manager, the assailant became angry and hit him repeatedly. Eventually, the manager grabbed a piece of block and broke the glass door. He then entered the store and gave the assailant $2,000 from the store safe. The assailant ordered him to take off his clothes and remain on the floor until after he had left. Turnley testified that Appellant carried a revolver during this robbery.

Turnley provided the bulk of the testimony concerning the remaining charges. She testified to a series of thefts and burglaries involving herself and Appellant. In each incident, Appellant wore dark clothing, gloves, and a face covering, while she drove the getaway car. These additional crimes occurred at a construction site in a residential subdivision, a construction trailer near a vacant lot, a mini storage facility, a sports equipment retailer, and a construction equipment rental store.

The jury found Appellant guilty of three counts of robbery in the first degree, ten counts of burglary in the third degree, six counts of theft by unlawful taking over $300, and receiving stolen property over $300. The jury acquitted Appellant of wanton endangerment and one count of theft by unlawful taking.

During the penalty phase, the jury found Appellant to be a persistent felony offender in the first degree. Appellant was sentenced to twenty years imprisonment for each robbery and ten years for each of the remaining charges. The trial court ordered that the three robbery convictions and one receiving stolen property conviction run consecutively. The remaining convictions for burglary and theft were ordered to-run concurrently. Appellant now appeals the judgment as a matter of right. Ky. Const. 110(2)(b).

Further details will be developed as necessary.

### Collateral Estoppel

Appellant first argues that the Commonwealth was collaterally estopped from litigating whether he was armed during the robberies because of his acquittal on the charge of possession of a handgun

by a convicted felon. At the former trial, the jury made a finding that Appellant did not possess a handgun in Christian County "on or between May 26, 2007 and August 31, 2007." Prior to his second trial, Appellant moved to exclude any evidence or testimony that he possessed a handgun at any time between May 26, 2007 and August 31, 2007. The trial court denied the motion.

 The doctrine of collateral estoppel applies to criminal cases and generally means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in a future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). *See also* KRS 505.040(2) (codifying principle of collateral estoppel). The defendant bears the steep burden of proving that the issue he seeks to foreclose from relitigation was actually decided in the first proceeding. *Benton v. Crittenden*, 14 S.W.3d 1, 5 (Ky.1999). "If a fact was not 'necessarily determined' in the former trial, the possibility that it may have been decided does not preclude reexamination of the issue." *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 152, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). Stated otherwise, the doctrine extends only to questions of fact distinctly put in issue in the former prosecution and not merely collaterally in question.

 Determining which questions were "actually decided" in the first proceeding frequently involves more than simple reference to the jury's verdict, particularly when, as here, the acquittal was based on a general verdict. In such circumstances, the reviewing court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge and other relevant matter, and conclude whether a rationale jury *could have*

*grounded its verdict* upon an issue other than that which the defendant seeks to foreclose from consideration [in the subsequent proceeding]." *Benton*, 14 S.W.3d at 4 (quoting *Ashe*, 397 U.S. at 444, 90 S.Ct. 1189) (emphasis in original). "The instructions under which the verdict was rendered, however, must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180 (1948).

Though a general verdict was issued in Appellant's first trial, the limited evidentiary requisites of the charge make it fairly simple to discern the issue upon which the jury based its decision. According to the instructions delivered, the Commonwealth needed only to prove that Appellant knowingly possessed a handgun in Christian County between May 26, 2007 and August 31, 2007, and that he was a convicted felon when he did so. The Commonwealth's theory was that Appellant constructively possessed the gun found in Turnley's bedroom dresser drawer. No evidence concerning the other alleged offenses was admitted.

Naturally, the bulk of the Commonwealth's case focused on Appellant's possession of the handgun, not his status as a convicted felon. The Commonwealth called Turnley to testify that Appellant lived at her apartment and kept nearly all of his belongings there. She also identified the gun found in her bedroom and stated that it belonged to Appellant. Detective Alexander, who executed the search warrant, testified that he found the gun in the same drawer as Appellant's wallet and identification cards. Appellant's parole officer testified that Appellant never listed Turnley's apartment as his address, but that she found him at the residence on at least a few occasions.

Though the defense presented little evidence, Appellant very successfully created reasonable doubt through cross-examination. In many respects, the case was a swearing contest between Appellant and Turnley. She was the Commonwealth's key witness and the only one who allegedly saw Appellant physically possess the gun. Defense counsel was very effective in seriously discrediting Turnley, who at one point even admitted that she had previously lied under oath. The defense also highlighted that none of the remaining witnesses saw Appellant with the gun, and that his fingerprints were not found on the gun. Further, the defense created considerable doubt that Appellant ever lived at Turnley's home, noting that he neither listed the apartment as his residence nor paid bills there. Finally, Appellant himself testified, denying possession of the handgun.

Regarding Appellant's status as a convicted felon, the Commonwealth called a Christian Circuit Court clerk who testified that Appellant was convicted of receiving stolen property over $300 on November 26, 2003. In addition, Appellant's parole officer testified that he was on parole at the time of his arrest in August of 2007. Appellant testified that he was on parole for a felony conviction at the time in question.

However, the jury instructions in Appellant's first trial contained a typographical error. Though the clerk testified that Appellant's prior conviction was entered on *November 26, 2003*, the jury was asked if it found beyond a reasonable doubt that Appellant was "previously convicted of receiving stolen property over $300 by a judgment from the Jefferson Circuit Court entered on *March 29, 2004*." The Commonwealth argues that it is impossible to conclude whether or not the jury based its verdict on a finding that it failed to prove Appellant's prior conviction. The Com-

monwealth is correct that collateral estoppel will not be applied where the precise issue determined by the jury cannot be determined with certainty.

There are only two possible bases for the jury's acquittal: (1) that Appellant was not a convicted felon at the specified time; or (2) that Appellant did not actually possess the gun found in Turnley's dresser drawer. Having thoroughly reviewed the record of the first trial, we conclude that a rational jury could not have based its decision on the issue of Appellant's felon status. As the Commonwealth acknowledges in its brief before this Court, Appellant's felon status was not disputed at trial and both parties *repeatedly* emphasized that the sole issue was whether he possessed the handgun. It was essentially stipulated. We must examine the first trial with "realism and rationality." *Ashe*, 397 U.S. at 444, 90 S.Ct. 1189. Taking into consideration all the circumstances of the proceedings, the Commonwealth's assertion that the jury may have based its verdict on the felon status issue is simply untenable. *See Rice v. Marshall*, 816 F.2d 1126, 1131–32 (6th Cir.1987) (where defendant was acquitted of possessing a weapon as a convicted felon, jury must have reached verdict based on the possession issue where his status as a convicted felon was uncontested).

■ The effect of this determination is not necessarily a complete bar to subsequent prosecution, as Appellant claims.

[A]lthough a judgment in a former criminal prosecution may be *res judicata* with respect to specific facts or issues determined therein, it will not bar a subsequent prosecution unless the facts or issues so determined are necessarily decisive in the second prosecution and a conviction could not possibly be had therein without contradicting the former determination of such facts or issues.

*People v. Cornier,* 42 Misc.2d 963, 249 N.Y.S.2d 521, 527 (N.Y.Sup.1964). The crucial inquiry is whether the first trial required a determination inconsistent with any fact necessary to a conviction in the present case, i.e., whether the first jury must have decided against the Commonwealth on an issue that will be necessary to convict Appellant of robbery in the second proceeding.

Here, the first jury determined that between May 26, 2007 and August 31, 2007, Appellant did not possess the handgun found in Turnley's apartment. The jury did not—as Appellant contends—determine that he never possessed a gun during that time period. This interpretation of the jury's acquittal is simply too broad. In the second trial, the Commonwealth needed only to prove that Appellant wielded a gun during the robberies. The Commonwealth did not need to prove that Appellant possessed the gun found in the dresser at Turnley's apartment.

Thus, the trial court correctly concluded that collateral estoppel does not bar Appellant's prosecution for robbery. Instead, the effect of the acquittal is to bar relitigation of the issue determined in Appellant's first trial, i.e., that he constructively possessed the handgun found in Turnley's apartment. *See Napier v. Jones By and Through Reynolds,* 925 S.W.2d 193, 195–96 (Ky.App.1996). The record is unclear whether the trial court defined these evidentiary parameters in denying Appellant's motion to exclude.

At any rate, testimony was admitted connecting Appellant to that gun. At the second trial, Turnley testified that Appellant used a gun during the Kangaroo Express robbery, and that he usually kept that gun in her bedroom dresser drawer. Joshua Quarles testified that Appellant used a gun during the BP robbery and identified the weapon as the one found in Turnley's dresser during the search. Appellant testified on his own behalf and denied owning the gun or any of the items seized from Turnley's home. Detective Alexander testified that the police found a revolver during the search of Turnley's dresser.

The admission of this evidence was not error. Though collateral estoppel bars relitigation of the issue decided in the former prosecution, it does not serve as a blanket prohibition on any evidence of the acquitted offense. The U.S. Supreme Court has clarified that the double jeopardy clause does not "exclude in all circumstances ... relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *Dowling v. U.S.,* 493 U.S. 342, 348, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (evidence of acquitted crime was admissible pursuant to KRE 404(b) at subsequent trial of related offenses). *See also Hampton v. Commonwealth,* 133 S.W.3d 438, 442 (Ky.2004).

Here, the handgun evidence was not used to relitigate the issue of whether Appellant constructively possessed the gun found at Turnley's apartment. Nor was that fact a necessary element of robbery, burglary, or any other offense tried at the second proceeding. Rather, it was introduced to establish that Appellant used a gun during the robberies and was admissible pursuant to KRE 401 and 402. There was no error.

### Search Warrant

■ Appellant claims that his constitutional rights were violated by the search of Turnley's apartment. He filed three motions to suppress the evidence, all of which were denied by the trial court. On appeal, Appellant attacks the warrant on the grounds that it lacks probable cause; that it is an unauthorized general warrant; and

that the scope of the search exceeded the bounds of the warrant.

We need not resolve any of these arguments. In addressing Appellant's claims, the parties have overlooked a critical circumstance, i.e., Appellant never established standing to contest the search. No evidence was presented at either suppression hearing that Appellant legally resided with Turnley, enjoyed unrestricted access to the apartment, had a key to the apartment, or paid bills there. For the purpose of explaining the belief of the police that Appellant's belongings could be found at the residence, the Commonwealth elicited some testimony that Appellant had a romantic relationship with Turnley, and that he sometimes stayed at her residence. Defense counsel thoroughly contested that issue. In fact, even after the trial court made an oral ruling on the motion, Appellant insisted on testifying for the *express* purpose of rejecting the notion that he resided at the apartment. In short, a central prong of Appellant's suppression argument was that he did not live at Turnley's apartment.

A defendant bears the burden of establishing standing to challenge a Fourth Amendment search. *United States v. Sangineto–Miranda,* 859 F.2d 1501, 1510 (6th Cir.1988). That burden requires proof that the defendant had a legitimate expectation of privacy in the premises. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). There was proof that Appellant was, at times, a frequent visitor to the apartment. However, no evidence was presented to establish a legitimate expectation of privacy. Therefore, Appellant cannot now complain of a Fourth Amendment violation. *See Sussman v. Commonwealth,* 610 S.W.2d 608, 611 (Ky.1980) (appellant lacked standing to challenge search of girlfriend's apartment, though she gave him a

key to the residence for limited use); *Combs v. Commonwealth,* 341 S.W.2d 774, 775 (Ky.App.1961) (appellant lacked standing to challenge search of residence owned by grandfather, though he lived in the home).

Even if Appellant had established a legitimate expectation of privacy in the apartment, we note that the trial court made a specific finding that Turnley "justified" the search. It appears this conclusion is based on Detective Sumner's testimony that, when the officers appeared with the warrant, they were granted permission to enter the apartment by Turnley's teenage children. "[T]he owner or person in charge of a house at. the time a search is made may consent to a search, thus waiving the constitutional guaranty against unlawful search and seizure and rendering competent evidence so obtained provided the consent is voluntary and not coerced." *Id.* (quoting *Bruner v. Commonwealth,* 192 Ky. 386, 233 S.W. 795 (1921)).

The trial court properly denied the motion to suppress.

### Jury Instructions

Appellant correctly argues that the jury instructions on nine counts of burglary in the third degree were improper. The burglaries occurred at the Eagle Mini Storage facility, and the nine counts reflected the nine storage units that were broken into. Each of the nine instructions relating to the Eagle Mini Storage incident, however, was identical and in no way differentiated or distinguished one count from another.

This type of instruction is clearly erroneous. *Harp v. Commonwealth,* 266 S.W.3d 813, 818 (Ky.2008). We are unpersuaded by the Commonwealth's argument that the error is harmless because the jury indicated its unanimity by convicting on all

nine counts. The error potentially deprives Appellant of a unanimous verdict and adequate appellate remedy and, therefore, prejudices his substantial rights. *Miller v. Commonwealth*, 283 S.W.3d 690, 696 (Ky.2009). As such, palpable error occurred and reversal of nine counts of burglary in the third degree is required.

### Two Counts of Theft

■ Appellant next argues that he was twice put in jeopardy where he was convicted of two thefts arising from a single offense. He concedes the argument is not preserved for review. Nonetheless, with respect to double jeopardy claims, "[p]resentation of such errors to the trial court, while perhaps preferable, is not required." *Cardine v. Commonwealth*, 283 S.W.3d 641, 652 (Ky.2009).

The evidence at trial established that Appellant and Turnley cut the fence at a sports equipment retailer and pushed two ATVs through the opening. Turnley then drove a pick-up truck over to the fence and Appellant loaded one of the ATVs into the bed of the truck. He instructed Turnley to drive while he followed, riding the second ATV. But as she drove away, the ATV fell off the truck. They continued, stashed the ATV driven by Appellant in an abandoned barn, and returned for the second ATV.

The essence of Appellant's argument on appeal is that the offense was a single theft of two ATVs, not two thefts. Indeed, the act of taking multiple items from one residence constitutes one theft. *Jackson v. Commonwealth*, 670 S.W.2d 828, 832 (Ky.1984) (overruled on other grounds by *Cooley v. Commonwealth*, 821 S.W.2d 90 (Ky.1991)). Appellant pushed both ATVs through the fence and off the owner's property at the same moment. The fact that he had to temporarily abandon one of the ATVs during his escape is of no conse-

quence, as the theft was already complete. Both ATVs were taken from the same place at the same time. *See Fair v. Commonwealth*, 652 S.W.2d 864, 867 (Ky.1983) (holding that only one theft conviction could stand where defendant took three items from building on same night, though items belonged to two different parties). One of the theft convictions must be vacated for this reason.

### Admission of Appellant's Letter

■ Finally, Appellant claims that the trial court erred in allowing admission of a letter written by him. Defense counsel objected to its admission on grounds of authentication. The trial court found that the letter contained sufficient statements that identified Appellant as the author.

■ The burden on the Commonwealth to establish that the letter was written by Appellant is "slight" and requires only a prima facie showing. *Sanders v. Commonwealth*, 301 S.W.3d 497, 501 (Ky.2010). The contents of the letter, taken in conjunction with the circumstances, can be relied upon in determining authentication. KRE 901(b)(4).

Here, the Commonwealth demonstrated that the letter was intercepted at the Christian County Jail while Appellant was located in that facility. It was addressed to "Dawn" from "Larry," and its tone suggests a romantic relationship. The author references the charges in this case, a seized gun and clothing, and a potentially lengthy prison sentence. The author also implores the recipient not to "talk." Finally, the author indicates intent to challenge a search warrant prior to trial. Based on the quantity of identifying facts contained in the letter, the trial court did not abuse its discretion in ruling that it was properly authenticated. *See Johnson v. Commonwealth*, 134 S.W.3d 563, 566–67 (Ky.2004).

*Conclusion*

The judgment of the Christian Circuit Court is affirmed in part and reversed in part. The nine burglary convictions arising from the Eagle Mini Storage facility are reversed. In addition, one of Appellant's convictions for theft by unlawful taking over $300 is vacated. The matter is remanded to the Christian Circuit Court for further proceedings consistent with this opinion.

MINTON, C.J.; NOBLE, SCHRODER and VENTERS, JJ., concur.
ABRAMSON, J., concurs in result only.
CUNNINGHAM, J., concurs in part and dissents in part by separate opinion in which SCOTT, J., joins.

CUNNINGHAM, J., Concurring in Part and Dissenting in Part.

I respectfully concur in part and dissent in part. The giving of identical instructions is not palpable error where there is sufficient evidence to convict a defendant on all of the identical instructions and the jury does, in fact, convict.

That is precisely the situation we have here. The *Miller* case cited by the majority does not stand for the proposition that identical instructions are always palpable error. In fact, in *Miller* we refuse to go that far. In that case, the jury did not find the defendant guilty on all of the identical instructions and, therefore, we do not know which particular offenses were unanimously agreed upon. However, we are careful in *Miller* to state: "Yet, that is not to say that every error in jury instructions rises to the level of palpable error." 283 S.W.3d at 696.

I rely primarily on *Bell v. Commonwealth,* 245 S.W.3d 738 (Ky.2008). In that case this Court, in a unanimous decision, held: "Because the jury ultimately found Bell guilty of all five counts of sexual abuse, it can be rationally and fairly deduced that each juror believed Bell was guilty of the five distinct incidents identified by the Commonwealth." *Id.* at 744.

The primary rationale of the unanimity rule of both *Miller* and *Bell* is that identical instructions can remove the ability to challenge the sufficiency of the evidence on appeal. That is not a concern when a jury convicts on all counts. In those instances, there is still a rational basis of appeal.

Nine identical instructions were given here on the various mini-storage burglaries, and the Appellant was convicted on all counts. Therefore, no palpable error occurred. I dissent as to the reversal of the burglary counts and concur in all other parts of the opinion.

SCOTT, J., joins.