RENDERED:  FEBRUARY 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1796-MR

RUSSELL THOMPSON                                                          APPELLANT


                        APPEAL FROM MCCRACKEN CIRCUIT COURT
v.                      HONORABLE TIMOTHY KALTENBACH, JUDGE
                        ACTION NO. 18-CR-00673-002


COMMONWEALTH OF KENTUCKY                                                   APPELLEE


OPINION
AFFIRMING IN PART, VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

JONES, JUDGE:  Following a jury trial in McCracken Circuit Court, the

Appellant, Russell Thompson, was convicted of first-degree possession of a

controlled substance and possession of drug paraphernalia.  He was sentenced to

serve one year and, among other things, ordered to pay a $200.00 partial public

advocate fee.  On direct appeal before us, Thompson challenges the denial of his

suppression motion as well as imposition of the $200.00 public advocate fee.  The

Commonwealth agrees with Thompson that the trial court erred when it imposed the public advocate fee; however, it maintains that the suppression motion was correctly decided by the trial court because Thompson lacked a reasonable expectation of privacy in the home police searched.

Having reviewed the record and being otherwise sufficiently advised, we affirm the trial court with respect to denial of Thompson's motion to suppress, we vacate the judgment with respect to imposition of the public advocate fee, and remand this matter for entry of a new judgment of conviction.

## I. BACKGROUND

On August 6, 2018, McCracken County Sherriff's Deputy Dustin Awbery obtained and executed a search warrant for 2728 Tennessee Street in Paducah, Kentucky. The property was owned by Monte Turner. Thompson did not live at the property; however, Mr. Turner was allowing Thompson and another individual, Rebecca Cole, to keep a dog and ten puppies in part of the house. Thompson and/or Ms. Cole would go over to the house to tend to the dogs and clean up after them. Ms. Cole testified that the dogs were kept in the back part of the house and this was where she mostly stayed when she would come over to tend to them.

When officers arrived at the Tennessee Street home to execute the warrant, Mr. Turner was not home. However, Thompson, Ms. Cole, and another individual, Stephen Cotton, were at the home. Police found the three in the living room. Thompson was sitting on a couch, with Ms. Cole and Mr. Cotton on the other side of the living room across from Thompson. Pursuant to the warrant, Deputy Awbery set about searching the house. During the search, he found a blue bank bag. The bag was located on the couch to the right of Thompson's leg. Plastic baggies containing methamphetamine residue, a small amount of methamphetamine, pipes, digital scales, a spoon, and a prescription bottle with Ms. Cole's name on it containing two grams of methamphetamine along with a "buycrash.com" ticket with Thompson's name on it[1] were found inside the blue bank bag. During the search, Deputy Awbery also found a torch lighter next to Thompson on the couch.[2] Based on the items located and seized during the search, Thompson was charged with first-degree possession of a controlled substance (methamphetamine) and possession of drug paraphernalia.

---

[1] A "buycrash.com" ticket is given to the parties involved in an accident as a way to get the accident report online. This ticket involved an accident on July 2018, in which Thompson was the driver of a car that hit a police cruiser. Thompson disclaimed that the bag belonged to him and said he did not know how his buycrash.com ticket came to be inside the bag.

[2] During Thompson's trial, Deputy Awbery testified that a torch lighter is more powerful than a regular lighter and could be used for smoking methamphetamine.

Prior to trial, Thompson moved the trial court to suppress the items found during the search. Thompson argued that the search warrant was not supported by probable cause; specifically, he asserted that the affidavit upon which the finding of probable cause was based did not describe or corroborate the informants' reliability, veracity, and basis of knowledge. The Commonwealth objected to suppression of the evidence. The trial court held a suppression hearing on March 13, 2019.

During the suppression hearing, Thompson testified that he lived at 4340 Contest Road, but that his residence was not suitable to house the dogs, which belonged to him and Ms. Cole. He explained that Mr. Turner had agreed to allow him and Ms. Cole to keep the dogs at the Tennessee Street property until they could get rid of them. Thompson and/or Ms. Cole would come to the residence daily to tend to the dogs. There was no evidence presented that Thompson ever stayed overnight at the residence or kept any other belongings there. Neither Thompson nor Ms. Cole testified that Mr. Turner had given them a key to the residence or that they had any possessory interest in the home.

Following the suppression hearing, the trial court entered a written order denying Thompson's motion. Noting that Thompson's "only evidence was that the owner of the premises allowed him to keep his dogs there until he could get rid of them," the trial court concluded that Thompson did not have standing to

contest the search of the Tennessee Street residence because he failed to establish he had a reasonable expectation of privacy with respect to the residence and its contents. Alternatively, the trial court determined that even if Thompson did have standing, the motion to suppress would be denied because the search warrant was supported by probable cause. Furthermore, the trial court found even if probable cause did not support issuance of the search warrant, it would have been admissible pursuant to the good-faith exception to the exclusionary rule.

Thereafter, the matter proceeded to trial. Following the presentation of evidence, the jury found Thompson guilty of first-degree possession of a controlled substance and possession of drug paraphernalia. On November 14, 2019, the trial court entered its final judgment and sentence. Thompson was sentenced to one year for the count of first-degree possession of a controlled substance, methamphetamine, and fined $250.00 for the offense of possession of drug paraphernalia. Along with other costs, the trial court ordered Thompson to pay a $200.00 partial public advocate fee.

This appeal followed.

## II. ANALYSIS

Thompson's primary argument on appeal is that the trial court erred in denying his motion to suppress. We begin by noting that the parties as well as the trial court couched this argument in terms of whether Thompson had

"standing" to contest the search of the Tennessee Street residence. Our Supreme Court recently reminded "the bench and bar that a 'standing' analysis is improper under Fourth Amendment substantive law." *Warick v. Commonwealth*, 592 S.W.3d 276, 280 (Ky. 2019). The logic is that all criminal defendants subjected to a search or seizure by law enforcement officials technically have "standing" to bring a Fourth Amendment challenge. Whether such a claim is successful is a different matter. That determination requires consideration of the substance of the claim. *Rawlings v. Commonwealth*, 581 S.W.2d 348, 349 (Ky. 1979), *aff'd sub nom.*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). The first step in the analysis is to determine whether the person has a legitimate expectation of privacy in the place searched. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). Accordingly, hereinafter we will evaluate Thompson's standing argument in terms of whether he had a legitimate expectation of privacy in the Tennessee Street residence where he was keeping his dogs.

The Fourth Amendment of the United States Constitution, as applied to the states under the Fourteenth Amendment, and Section 10 of the Kentucky Constitution provide safeguards against unreasonable searches and seizures.[3] "The

---

[3] Section 10 of the Kentucky Constitution "provides no greater protection than does the federal Fourth Amendment." *Artis v. Commonwealth*, 360 S.W.3d 771, 774 (Ky. App. 2012) (quoting *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky. 1996), *abrogated on other grounds by Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)).

-6-

basic purpose of [the Fourth] Amendment, as recognized in countless decisions of [the United States Supreme Court] is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. The Fourth Amendment thus gives concrete expression to a right of the people which 'is basic to a free society.'" *Singleton v. Commonwealth*, 364 S.W.3d 97, 101 (Ky. 2012) (quoting *Wolf v. Colorado*, 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949), *overruled on other grounds by Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

"[P]roperty rights are not the sole measure of Fourth Amendment violations." *Carpenter v. United States*, ⸺ U.S. ⸺, 138 S.Ct. 2206, 2213, 201 L.Ed.2d 507 (2018) (quoting *Soldal v. Cook County*, 506 U.S. 56, 64, 113 S.Ct. 538, 545, 121 L.Ed.2d 450 (1992)). "Instead of focusing on property ownership or the lack thereof, we engage in a multi-step analysis predicated on the expectation of privacy from governmental intrusion." *Bolin v. Commonwealth*, 592 S.W.3d 305, 310 (Ky. App. 2019). The individual must establish both that he had an actual, subjective expectation in the area searched and that that expectation is one that society is prepared to recognize as reasonable. *Id.*; *see also Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979)).

We must now consider whether Thompson had a legitimate expectation of privacy in the Tennessee Street residence. Thompson did not live at

the residence. Nothing indicated he even stayed overnight there. Neither Ms. Cole nor Thompson testified that the area in which the two kept their dogs was devoted to their exclusive use. The evidence merely showed that Mr. Turner, the home's owner, allowed Thompson and Ms. Cole to come and go from the premises for the purpose of caring for their dogs.

In *Ordway v. Commonwealth*, 352 S.W.3d 584, 591 (Ky. 2011), the Kentucky Supreme Court considered whether Larry Ordway had a reasonable expectation of privacy in his girlfriend's apartment. *Id.* at 592. Both before the trial court and on appeal, Ordway attacked the search warrant for the apartment on the grounds that it lacked probable cause; that it was an unauthorized general warrant; and that the scope of the search exceeded the bounds of the warrant. *Id.* at 591-92. Ultimately, the Kentucky Supreme Court concluded that it did not have to address any of Ordway's challenges to the warrant because he failed to demonstrate that he had a reasonable expectation of privacy with respect to the apartment. *Id.* at 592. To this end, the Court noted that Ordway had failed to produce any evidence that he "legally resided with [his girlfriend], enjoyed unrestricted access to the apartment, had a key to the apartment, or paid bills there." *Id.*; *see also Hawley v. Commonwealth*, 435 S.W.3d 61 (Ky. App. 2014).

"[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the

householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998). At best, Thompson merely established that he was at the home with Mr. Turner's consent. This fact alone, however, is insufficient to establish that Thompson had a reasonable expectation in the entire home, especially in areas of the home separate from where he was keeping the dogs. Certainly, there was no showing by Thompson that he had a reasonable expectation of privacy in the home's living room where the search occurred. Accordingly, we agree with trial court that Thompson failed to show that his Fourth Amendment rights were violated.

This brings us to Thompson's second argument regarding the trial court's imposition of the $200.00 public advocate fee. KRS[4] 31.120(1)(c) provides:

> A person who, after conviction, is sentenced while being represented by a public defender shall continue to be presumed a needy person, and the court, at the time of sentencing, shall enter an Order In Forma Pauperis for purposes of appeal without having to show further proof of continued indigency, *unless the court finds good cause after a hearing to determine that the defendant should not continue to be considered an indigent person*.

(Emphasis added.)

---

[4] Kentucky Revised Statutes.

The trial court found Thompson to be indigent and appointed DPA[5] counsel to represent him. DPA counsel continued to represent Thompson at sentencing, and the trial court granted Thompson *in forma pauperis* status on appeal. As part of the final judgment entered against Thompson, the trial court appended a completed AOC-form 590, "Costs/Fees & Fines List" to Thompson's judgment. Among other costs and fines, Thompson was ordered to pay $200.00 for his public advocate. However, there is nothing in the record to indicate that the trial court conducted a hearing and found good cause to determine Thompson should not continue to be considered an indigent person prior to imposing the $200.00 fee. Citing *Spicer v. Commonwealth*, 442 S.W.3d 26, 35 (Ky. 2014), Thompson asserts that without such findings, the trial court's imposition of the $200.00 attorney fee was improper.

Thompson is correct. And, commendably, the Commonwealth acknowledges in its appellee brief that the trial court's imposition of the $200.00 public advocate fee runs afoul of KRS 31.120(1)(c). As such, we must vacate the judgment with respect to imposition of the $200.00 public advocate fee.

### III. CONCLUSION

For the aforementioned reasons, we affirm Thompson's convictions and sentences for first-degree possession of a controlled substance and possession

---

[5] Department of Public Advocacy.

of drug paraphernalia.  We vacate the imposition of the partial public advocate's

fee and remand this matter to the McCracken Circuit Court for entry of a new

judgment consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robert Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

E. Bedelle Lucas
Assistant Attorney General
Frankfort, Kentucky