**Karen HAMPTON, Appellant,**

v.

**COMMONWEALTH OF KENTUCKY,**
**Appellee.**

**No. 2002–SC–0291–MR.**

Supreme Court of Kentucky.

Feb. 19, 2004.

As Amended April 19, 2004.

As Modified on Denial of Rehearing
May 20, 2004.

John Palombi, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Samuel J. Floyd, Jr., Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

GRAVES, Justice.

Appellant, Karen Hampton, was convicted in the Laurel Circuit Court of the 1998 murder of her husband, Wade Hampton, as well as tampering with physical evidence. She was sentenced to fifty years imprisonment on the murder charge and five years on the tampering charge, to run consecutively for a total of fifty-five years imprisonment. She appeals to this Court as a matter of right.

Wade Hampton was sleeping on the morning of August 13, 1998, when Appellant and the couple's two children left the house around 7:30 a.m. According to Appellant, she took the children to school and then went to look for work at a tobacco patch. She left when she realized no one was working that day, and then went to a Dairy Mart to buy a Mountain Dew and cigarettes. The cash register receipt indicated Appellant had left the store before 7:57 a.m. She thereafter stopped at the home of Wade's aunt sometime between 8:00 and 8:30 a.m., leaving at approximately 8:45 a.m. Appellant stated that she returned home to find her husband lying on the floor with several gunshot wounds to his back. She stated that she called 911, and, at about 9 a.m., ran to her next-door neighbor's home, and told him of her discovery. She also told the neighbor that several items were missing from their trailer. A subsequent autopsy revealed that Wade died as a result of four gun shot wounds to the back, inflicted sometime between 7:00 and 8:00 a.m., although the coroner admitted that his estimate could have been off as much as an hour in either direction.

A couple of weeks after the murder, two garbage men were throwing items from Appellant's trash into the truck when a bowl broke open and .22 caliber ammunition spilled out. Upon further inspection, the men discovered a .22 caliber pistol

inside a money bag that had been placed in a child's book bag. A forensic scientist with the Kentucky State Police later determined that the gun was, in fact, the murder weapon. Following several interviews with police, Appellant was arrested and later indicted for Wade's murder.

Following a trial in August 1999, Appellant was found guilty of murder and tampering with physical evidence, and was sentenced to forty-five years imprisonment. On appeal, this Court reversed the convictions and ordered a new trial on the grounds that the trial court erred in permitting the Commonwealth to introduce a scandalous and highly inflammatory true-crime novel as evidence relevant to Appellant's plan, intent and preparation.

Following a second trial in February 2002, Appellant was again convicted of murder and tampering with physical evidence. She was sentenced to fifty-five years imprisonment and appeals to this Court as a matter of right. Additional facts will be set forth as necessary.

### I.

At trial, prosecution witness Jenny Goins testified that as a manager of Peoples Security Bank she made a loan to Appellant and Wade Hampton in the amount of $4,000.00. During the first trial, Goins was permitted to testify that Wade came into the bank in July 1998, after receiving a loan payment notice, complaining that he had never taken out a loan there and that he had not signed the loan papers that purportedly bore his signature. On appeal, we held that Goins testimony constituted an improper out-of-court hearsay statement made by the victim offered by the Commonwealth to prove the truth of the matter asserted, i.e., that Appellant and Wade were having financial and marital problems and that Appellant killed him for monetary reasons. This Court further noted that had the error

been preserved, it would have been reversible, and thus concluded that absent the Commonwealth demonstrating an exception justifying the admission of the statement, such was inadmissible on retrial.

At the second trial, Goins testified that she compared the signature on the loan papers with that on Wade's driver's license, and that "it didn't look like the same signature to [her]." Appellant argues that Goins was improperly permitted to give lay testimony as to the authenticity of Wade's signature even though she was not sufficiently familiar with his handwriting to do so. Again, any error is unpreserved as defense counsel did not object to Goins' testimony.

The Commonwealth responds that Goins was sufficiently familiar with what was purported to be Wade's handwriting since she processed the loan, and thus, she was properly permitted to express her opinion that the signatures did not look the same. We disagree. In fact, the documents that the Commonwealth contends established Goins' familiarity, the loan papers, are that which it seeks to prove as a forgery.

■ Notwithstanding, we conclude that Goins' testimony falls squarely within KRE 701, which permits a nonexpert witness to an express an opinion which is rationally based on the perception of the witness and is helpful to a determination of a fact in issue. In *Clifford v. Commonwealth*, Ky., 7 S.W.3d 371 (1999), we commented:

> The adoption of KRE 701 in this Commonwealth signaled this Court's intention to follow the modern trend clearly favoring the admission of such lay opinion evidence. KRE 701 reflects the philosophy of this Court, and most courts in this country, to view KRE 701 as more inclusionary than exclusionary when the lay witness's opinion is rationally based on the perception of the witness and is

helpful to the jury or trial court for a clear understanding of the witness's testimony or the determination of a factual issue.

*Clifford, supra,* at 377 (Johnstone, J. concurring).

This case is analogous to *Crowe v. Commonwealth,* Ky., 38 S.W.3d 379 (2001), wherein a witness testified that he observed what appeared to him to be a spot of blood the size of a golf ball on the defendant's floor, but that when he returned after leaving the room, the substance was gone. In upholding the testimony, we stated:

Flora did not opine that the substance was blood; he only stated that it appeared to him to be blood, i.e., it looked like blood. His testimony was rationally based on his own perception of what he personally observed and was helpful in determining a fact in issue, *viz:* whether Appellant attempted to conceal the fact that there was blood inside his residence. KRE 701.

*Crowe, supra,* at 384. Similarly, Goins did not opine that the signatures on the loan documents were, in fact, forged. Rather, she stated that in her opinion the signatures on the documents and the signature on Wade's driver's license did not look the same. Thus, Goins' testimony was based on her personal observation and was helpful to determining a fact in issue, *viz:* whether Appellant had a financial motive for murdering her husband. Accordingly, Goins' testimony was properly admissible under KRE 701.

## II.

■ Appellant was originally indicted for second-degree cruelty to animals stemming from evidence that she shot and killed the family cat at about the same time as she shot her husband in an effort to confuse the crime scene. However, at Appellant's first trial, the trial court granted her motion for a directed verdict on that charge. Nonetheless, Appellant contends that the Commonwealth impermissibly introduced evidence at the second trial concerning the death of the cat. Appellant concedes that any error is unpreserved but argues that such was palpable under RCr 10.26.

Although Appellant could obviously not be retried for the cruelty to animals offense, the Commonwealth stated during a pretrial conference that it intended to introduce evidence regarding the dead cat as it related to Appellant's commission of the other offenses. Specifically, the Commonwealth introduced evidence that Appellant had told a Detective Owens that a neighbor had shot the cat. However, Appellant's daughter and a Sheriff's Deputy, Buddy Blair, both testified that Appellant told them that Wade had shot the cat the previous day. Finally, Appellant herself testified that she had no idea how the cat had died. Since the forensic report indicated that the cat was killed with the same type of weapon used to shoot Wade, and since the examiner concluded that the cat died within the same time frame as Wade, the Commonwealth maintains that Appellant's conflicting statements about the death of the cat were relevant and admissible.

Appellant relies on this Court's decision in *Commonwealth v. Hillebrand,* Ky., 536 S.W.2d 451 (1976), wherein we held that the Commonwealth is precluded from introducing evidence of issues that "must have been decided" against the Commonwealth at the previous trial. *Citing Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). It is Appellant's position that the trial court granted a directed verdict on the animal cruelty charge because the Commonwealth was unable to prove that she killed the cat. Thus, since the issue was necessarily decided against the Commonwealth at the first trial, Ap-

pellant argues that it should have been prohibited from introducing any evidence relating to the cat regardless of whether she was being tried for the offense or not.

In *Benton v. Crittenden*, Ky., 14 S.W.3d 1 (2000), this Court noted in dicta that in a post-*Ashe* decision, *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), the United States Supreme Court concluded that an acquittal does not bar evidence of the same conduct in a subsequent trial. In *Dowling*, the Government introduced evidence of a previous residential robbery for which the defendant had been acquitted for the purpose of establishing the identity of the defendant as the bank robber, as well as to link him with another man who had allegedly participated in both robberies. The Supreme Court held that an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof.

> [T]o introduce evidence on this point at the [subsequent] bank robbery trial, the Government did not have to demonstrate that Dowling was the man who entered the home beyond a reasonable doubt: the Government sought to introduce Henry's testimony under Rule 404(b), and, as mentioned earlier, in *Huddleston v. United States*, [485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988)], we held that "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Because a jury might reasonably conclude that Dowling was the masked man who entered Henry's home, even if it did not believe beyond a reasonable doubt that Dowling committed the crimes charged at the first trial, the collateral-estoppel component of the double jeopardy clause is inapposite.

*Dowling, supra,* at 348–49, 110 S.Ct. at 672. One notable difference in the *Dowling* case, however, is that the trial judge twice instructed the jury about Dowling's acquittal of the prior charge and the limited purpose for which the evidence was being admitted. *Id.* at 342, 110 S.Ct. at 669. Here, no limiting instruction was requested or given.

Although Appellant is correct that the *Benton* decision did not expressly overrule *Hillebrand* such was not necessary since *Benton* did not concern the use of 404(b) evidence. "Although *Hillebrand* may have unnecessarily applied a higher standard to the introduction of Rule 404(b) evidence, its interpretation of the holding in *Ashe v. Swenson* is at least applicable to the normal collateral estoppel scenario represented by the facts of this case." *Benton, supra,* at 5, note 1.

While the trial court may have found that the Commonwealth did not prove beyond a reasonable doubt that Appellant killed the cat in conjunction with murdering her husband, the jury could have reasonably concluded that Appellant did commit the act in an attempt to confuse the crime scene and turn suspicion away from herself. Accordingly, the evidence was proper under the lower burden of proof required for admissibility under KRE 404(b), and *Hillebrand* is overruled to the extent it is inconsistent with this opinion. Pursuant to *Dowling, supra,* a limiting instruction or admonition would have been proper if requested by Appellant. Nonetheless, the evidence concerning the death of the cat as it related to Appellant's commission of the other offenses was not error, palpable or otherwise.

### III.

Appellant's next allegation of error concerns the admission of double hearsay evidence by prosecution witness, Karen

Hammons. There was no objection to the challenged testimony either at the pretrial conference or at trial, thus any error is unpreserved. We conclude that both out-of-court statements fall within an exception to the hearsay rule, and no error, palpable or otherwise occurred. *Manning v. Commonwealth,* Ky., 23 S.W.3d 610 (2000).

█ Karen Hammons testified that at a party about a month before Wade's death, Appellant told her that Wade said he would divorce her [Appellant] if they lost the trailer, but that Appellant told Hammons, "it wouldn't happen." Appellant concedes that her statement to Hammons is admissible as a statement of a party opponent under KRE 801A(b)(1). However, she argues that Wade's statement to her does not fall within an exception and, citing *Crowe v. Commonwealth, supra,* 38 S.W.3d 379 (2001), that it was merely circumstantial evidence that was more prejudicial than probative. We disagree.

Appellant's reliance on *Crowe, supra,* is misplaced. In *Crowe,* the double hearsay issue concerned testimony by an attorney to the effect that her secretary told her that a person identifying herself as the victim had telephoned the office to discuss obtaining a divorce. In addition to holding that the attorney's testimony was inadmissible because there was no authentication that the person who made the phone call was, in fact, the victim, we also held that the testimony constituted double hearsay:

> [D]ouble hearsay is admissible only if each out-of-court statement falls within a recognized exception to the hearsay rule. KRE 805. Even though the caller's statement to the secretary fell within the scope of KRE 803(3), there is no hearsay exception which would allow [attorney] Roberts to testify to what the secretary told her. *Compare Thurman v. Commonwealth,* Ky., 975 S.W.2d 888,

893 (1998), *cert. denied,* 526 U.S. 1009, 119 S.Ct. 1150, 143 L.Ed.2d 217 (1999). *Crowe, supra,* at 383–84.

Hammons' testimony was offered to prove inferentially that Wade threatened to divorce Appellant if they lost the trailer, thus supporting the Commonwealth's theory that Appellant murdered him over financial and marital problems. As did the victim's statement in *Crowe,* Wade's statement to Appellant falls within the scope of KRE 803(3), "because declarations of present intent cast light upon the future as opposed to past events." Thus, both parts of the double hearsay fall within an exception to the rule and were properly admitted through Hammon's testimony.

### IV.

█ Appellant argues that the trial court erred in permitting the Commonwealth to introduce prejudicial victim impact evidence during the guilt phase of trial. Again, any error is unpreserved and Appellant urges review under RCr 10.26.

Numerous witnesses testified about Wade's good character and his actions toward others. Friends, neighbors, and relatives stated that Wade was a good person and did not cause trouble or have "problems" with others. One neighbor, Eldon Brown, testified that he never knew Wade to argue with anyone other than Appellant.

Appellant testified that the family trailer had been sold at a foreclosure sale and that on the day before Wade's death, they had received a notice that they had to vacate the property in the next few days. After Wade's death, numerous people helped Appellant pack and load items into various trucks. Appellant's defense theory was that a friend or neighbor must have killed Wade and thereafter placed the murder weapon in Appellant's garbage during the packing and moving process. As such, while evidence of Wade's nature

and demeanor certainly may have had some effect as victim impact evidence, we agree with the Commonwealth that the evidence was relevant and admissible to refute Appellant's defense theory. In light of the fact that no objection was raised to the evidence, we cannot conclude that such constituted palpable error. RCr 10.26.

## V.

■ Following her conviction in the first trial, Appellant moved the trial court to declare KRS 439.3401 unconstitutional, arguing that based on her 40–year murder sentence and the language of the statute, she would not be eligible for parole consideration until she served 34 years, or 85% percent of her sentence; if she had been sentenced to life imprisonment, however, she would have been eligible for parole consideration after she served only twenty years. While the trial court upheld the constitutionality of the statute, it ordered that Appellant be eligible for parole after twenty years pursuant to *Sanders v. Commonwealth*, Ky., 844 S.W.2d 391 (1992).

The Commonwealth filed a cross-appeal, and this Court held in the first opinion, that "while *Sanders, supra*, was once controlling of this question, the legislature amended KRS 439.3401 in response to *Sanders*, and applied the amended version to all offenses committed after July 15, 1998." *Hampton v. Commonwealth*, 1999–SC–0883 (May 24, 2001). Thus, we held the trial court erred in relying upon *Sanders*.

At the sentencing hearing following her convictions in the instant matter, defense counsel again moved the trial court to rule that Appellant would be eligible for parole consideration in twenty years. The trial court, citing this Court's prior determination of the issue in the first appeal, denied the request.

Appellant points out that while her appeal in this case has been pending, we rendered our decision in *Hughes v. Commonwealth*, Ky., 87 S.W.3d 850, 856, (2002), wherein we reaffirmed the interpretation of KRS 439.3401(3) set forth in *Sanders, supra:*

> KRS 439.3401(3), which pertains to sentences to a term of years and which was the provision interpreted in *Sanders, supra*, was not amended to add new language similar to that added to KRS 439.3401(2). Nor do we perceive any legislative intent in the 1998 amendments of KRS 532.060(2)(a) and KRS 532.110(1)(c) to affect the Sanders interpretation of KRS 439.3401(3).

Thus, under the current state of the law, a violent offender sentenced to a term of years is eligible for parole consideration after serving eighty-five percent (85%) of the sentence imposed, or twenty years, whichever is less.

The Commonwealth responds that this Court's decision in Appellant's first appeal is the law of the case and thus, she is not eligible for application of *Hughes, supra.* Further, the Commonwealth urges reconsideration of the *Hughes* decision on the grounds that "it takes what can only be described as a tortured interpretive route to avoid, and void, legislative intent which is statutory obvious."

■ The Commonwealth is correct that our ruling on this issue in the first appeal is the law of the case. *See Williamson v. Commonwealth*, Ky. 767 S.W.2d 323 (1989). Generally, a litigant may not raise on a subsequent appeal any question that could have been raised as well as those that were raised upon a former appeal. However, as our predecessor Court noted in *Gossett v. Commonwealth*, Ky., 441 S.W.2d 117, 118 (1969), where the law of the case rule is applicable, "it has sufficient flexibility to permit the appellate court to admit and correct an error made in the previous decision where

substantial injustice might otherwise result and the former decision is clearly and palpably erroneous." *See also White v. Commonwealth*, Ky., 360 S.W.2d 198 (1962).

In light of our decision in *Hughes, supra*, we conclude that our former decision in this case was, in fact, "clearly and palpably erroneous." Appellant's second appeal was pending review in this Court when *Hughes* was decided and, consequently was not yet final. *See Taylor v. Commonwealth*, Ky., 63 S.W.3d 151, 156 (2001), *cert. denied*, 536 U.S. 945, 122 S.Ct. 2632, 153 L.Ed.2d 813 (2002) (*citing Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987)). She clearly preserved the issue in the trial court and is entitled to the application of *Hughes, supra*. As such, she is eligible for parole consideration after serving twenty years of the fifty-five year sentence imposed.

Finally, we decline the Commonwealth's invitation to overrule *Hughes*, and note that should the legislature disagree with this Court's interpretation of KRS 439.3401, it should amend the statute accordingly.

For the reasons stated herein, the judgment and sentence of the Laurel Circuit Court are affirmed.

All concur.