# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 16, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0248-MR

ALLEN HENDERSON                                                      APPELLANT


V.                    ON APPEAL FROM HARDIN CIRCUIT COURT
                      HONORABLE KEN M. HOWARD, JUDGE
                      NOS. 19-CR-00237 & 19-CR-00239


COMMONWEALTH OF KENTUCKY                                             APPELLEE


### MEMORANDUM OPINION OF THE COURT

### <u>AFFIRMING</u>

Allen Henderson was convicted following a consolidated jury trial of two cases involving the theft of copper wire and equipment from two businesses. In the first case, Henderson was convicted of first-degree criminal mischief, theft by unlawful taking, and being a persistent felon. In the second case, Henderson was convicted of three counts of third-degree burglary, one count of first-degree criminal mischief, one count of second-degree wanton endangerment, and one count of being a persistent felon. Henderson was sentenced to twenty-years' imprisonment. He appeals his conviction to this Court. After careful review of the facts and arguments, we affirm the trial court.

## I.    BACKGROUND

On February 11, 2019, Kentucky State Police responded to a call from Vulcan Materials after employees found evidence that someone broke into the

property. Vulcan told Trooper Ellis that a socket set, a small refrigerator, a grease gun, and a large amount of copper wire had been stolen.

One week later, on February 18, Officer Richard Dearborn of the Vine Grove Police Department responded to a similar call from Scotty's Paving. Scotty's had experienced a power outage the night before, which raised suspicion with the Rural Electric Cooperative Corporation of a trespass. After employees investigated, they found that copper wires had been cut and stolen from throughout the entire plant.

Upon arriving at Scotty's, Officer Dearborn took extensive photographs of the scene. He noticed that in most of the places where copper wire had been cut, there were drag marks on the ground from the wire, often alongside a distinctive set of shoeprints. Officer Dearborn photographed the drag marks of the wire and the shoeprints. After leaving the site to confirm the names of individuals who had sold copper that day at local recycling and scrap businesses, Officer Dearborn returned to the scene. An employee informed Officer Dearborn that he had found a stash of copper wire on a trail not far away from the property. Officer Dearborn found the wire, along with the same drag marks and shoeprints from the plant leading to it. After finding the wire, he continued on the path, following the shoeprints. He found more copper wire and wire cutters. He then came across Christopher Henderson (Christopher) smoking a cigarette on the path.

After speaking with Christopher, Officer Dearborn noticed the sound of a motor. He followed the sound and found Allen Henderson (Henderson),

appellant in this case and Christopher's brother. Henderson's truck was stuck in the mud. Officer Dearborn believed that shoeprints surrounding the vehicle matched those found at the plant and on the trail. Henderson allowed Officer Dearborn to photograph his shoes, and Officer Dearborn believed the shoes' treads matched the shoeprints found in the plant, along the trail, and outside the truck. Seeing this, Officer Dearborn arrested Henderson on suspicion of the theft from Scotty's.

When Officer Dearborn executed a warrant to search Henderson's truck, he found pieces of wire insulation similar to that missing from Vulcan, a grease gun matching the description of the gun stolen from Vulcan, and a receipt for the sale of copper wire from January 30 of the same year, less than two weeks before the theft from Vulcan. Police then visited the home of Henderson's mother. She permitted the officers to search her property. There, they discovered stolen wire strippings, a socket set, and the refrigerator from Vulcan. Given the evidence of theft from the items found at Henderson's mother's house, in his vehicle, and at the scene, a grand jury indicted Henderson for the break-ins at both Vulcan and Scotty's. The two indictments were consolidated for trial.

At trial, the Commonwealth introduced evidence of the shoeprints found at the scene and the copper sales receipt over Henderson's objections. The trial court admitted both pieces of evidence. The jury found Henderson guilty of criminal mischief in the first degree, theft by unlawful taking under $500, and being a persistent felony offender in the first degree for the break-in at Scotty's.

3

It also found Henderson guilty of three counts of burglary in the third degree, one count of criminal mischief in the first degree, one count of wanton endangerment in the second degree, and being a persistent felony offender in the first degree for the break-in at Vulcan. Henderson was sentenced to twenty-years' imprisonment. He appeals the conviction. For the reasons stated below, we affirm the trial court.

## II.    STANDARD OF REVIEW

The two errors Henderson alleges regard the trial court's decision to admit evidence. We review these decisions for an abuse of discretion. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Cox v. Commonwealth,* 553 S.W.3d 808, 814 (Ky. 2018) (citations omitted).

## III.    ANALYSIS

On appeal, Henderson alleges two errors. First, Henderson argues that the trial court erred by permitting a police officer to testify as a lay witness regarding the similarity of shoeprint impressions. Second, Henderson argues that the trial court erred by admitting as evidence a receipt for the sale of copper unrelated to the crime alleged. For the reasons below, we find no error on either issue.

### A. Shoeprint Evidence

The shoeprints in this case were distinctive and simple: fourteen straight, thick line impressions and a flat heel. Officer Dearborn first saw the prints

4

around Scotty's, where he began to photograph them. The prints were then found on a path in between the plant and Henderson's truck. These prints were found next to tracks in the ground consistent with a thick wire being dragged along beside the person walking. The wire tracks stopped at a pile of copper wire left on the path, and the shoeprints continued to the vehicle where Henderson was found. Upon finding Henderson and his brother, Officer Dearborn asked to see each of their shoe treads. Henderson's boots showed fourteen straight, thick sections and a flat heel.

At trial, Officer Dearborn testified regarding the shoeprints and photographs he took at the scene. He had photographed the prints and boots, sometimes next to objects or a tape measure to compare. For example, in one photograph, Henderson's boot is shown next to one of the shoeprints. Officer Dearborn testified that because the shoeprints were a "match," he arrested Henderson. Henderson objected to the use of shoeprint evidence in this case. He argued that it should fall under Kentucky Rules of Evidence (KRE) 701 and 702, defining evidence requiring expert testimony. Henderson argued that because there are scientific methods and principles for analyzing shoeprint impressions, Officer Dearborn could not testify about them as a lay witness. The judge overruled the objection. The testimony was permitted. Henderson alleges that the trial court erred by not ruling that the shoeprint evidence required expert testimony.

This Court recently addressed the issue of shoeprint evidence in *Welch v. Commonwealth*, 563 S.W.3d 612 (Ky. 2018). In *Welch*, as here, police officers as

5

lay witnesses "testified that boot[ ]prints found near several locations connecting them to the crime were 'consistent' with the boots worn" by the defendant. *Id.* at 617. Officers there took pictures of the boot prints in snow and sent them to the state lab for an analysis. *Id.* The lab's report was inconclusive, but the officers were still permitted to testify that the boot prints were consistent with the defendant's boots. *Id.* This Court held that because the testimony was "based on [the officers'] perceptions" and was used to explain the progress of their investigation, the evidence did not constitute expert testimony. *Id.*

Henderson argues that *Welch* should be overruled due to the technical nature of shoeprint comparison and analysis. KRE 701(c), 702. Henderson would have this Court consider shoeprint evidence as we consider blood spatter evidence: a forensic science requiring expert testimony. *See, e.g., Wheeler v. Commonwealth*, 121 S.W.3d 173, 183 (Ky. 2003) (holding that a forensic expert was sufficiently qualified to testify regarding blood spatter evidence); *Dougherty v. Commonwealth*, No. 2005-SC-0358-MR, 2006 WL 3386576, *2 (Ky. Nov. 22, 2006) (holding that blood spatter evidence falls under KRE 702).

It is certainly true that in some cases, shoeprint evidence may require expert testimony for admittance—for example, testimony requiring scientific forensic analysis, such as determining gait, impression weight, and complex pattern analysis. However, this is dependent upon the content of the evidence presented, the purpose for which the evidence is presented, and whether the

evidence is "based on scientific, technical, or other specialized knowledge." KRE 701(c).

Here, as was the case in *Welch*, the officer testified regarding the consistency of the prints based off his observations and used the comparison to explain his arrest of Henderson. Here, Officer Dearborn testified specifically that he "didn't do much" by way of either analyzing the boots and prints themselves, or later via reviewing photographic evidence. The limited analytic tools he did use—e.g., taking comparative photos at the scene—were not scientific enough to render his testimony regarding the shoeprints "scientific, technical, or other specialized knowledge" that would trigger KRE 702. This is because the methods he used to make comparisons at the scene did not change the fact that the *content* of the evidence was not scientific, technical, or specialized. His use of a tape measure and iPhone to demonstrate the size of the shoeprints while taking photographs at the scene was merely diligently engaging in traditional detective work. The evidence itself was Officer Dearborn's testimony of his *observations*, illustrated through photographs, that the shoe print seemed to match the shoe.

By his own admission, Officer Dearborn used no more than his own perceptions to form his opinions on the evidence. Because this Court considers KRE 701 to be "more inclusionary than exclusionary when the lay witness's opinion is rationally based on the perception of the witness," we hold that the shoeprint evidence in this case falls under the permissible bounds of lay opinion testimony. *Hampton v. Commonwealth*, 133 S.W.3d 438, 440 (Ky.

7

2004) (citation omitted). Accordingly, the trial court did not abuse its discretion by allowing Officer Dearborn to testify regarding the shoeprint evidence.

### B. Copper Wire Receipt

While searching the vehicle in which Henderson was found, Officer Dearborn discovered a receipt for the past sale of scrap copper. The receipt was not for the sale of the copper stolen at either of the companies involved in this case. At trial, the Commonwealth entered the receipt as evidence. Henderson objected, claiming the receipt constituted inadmissible bad acts under KRE 404(b), and even if it did not, it was both irrelevant and more prejudicial than probative.

Under KRE 404(b),

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

For evidence of a prior bad act to be admitted, it must pass a three-prong test. *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994). However, to reach the three-pronged test, "such acts must amount to 'bad acts.'" *Meece v. Commonwealth*, 348 S.W.3d 627, 661–62 (Ky. 2011) (citations omitted). "Bad acts" are not limited to criminal or unlawful acts, but include "misconduct." *See id.*

Here, the receipt for the sale of copper wire did not indicate misconduct. The trial court found that the receipt did not constitute a bad act for the

purposes of KRE 404(b) because it simply recorded what was presumably a legal sale of copper wire. Instead, the trial court viewed the receipt in terms of its relevance, finding that it showed that Henderson was aware of the value of copper wire and where to sell it. The trial court was thus correct in its reasoning and in finding that the evidence did not fall under KRE 404(b).

We now move to Henderson's argument that the receipt was irrelevant. Under KRE 401 and 402, to be admitted, evidence must "tend[] to make a fact or consequence more or less probable." *Meece*, 348 S.W.3d at 666 (citing KRE 401). "Relevancy is established by any showing of probativeness, however slight." *Springer v. Commonwealth*, 998 S.W.2d 439, 449 (Ky. 1999). We give great deference to a trial court's relevancy decisions because they are "in a better position" to make those determinations. *Webb v. Commonwealth*, 387 S.W.3d 319, 325 (Ky. 2012) (citation omitted).

In this case, the Commonwealth sought to introduce the receipt to establish that Henderson had the knowledge required to sell copper wire, as well as knowledge of the wire's value. These two pieces of knowledge are not commonly held. For both reasons, therefore, the receipt was sufficiently probative.

Finally, we turn to Henderson's argument that the receipt was more prejudicial than probative. For this argument, Henderson relies upon KRE 403, which states that even evidence that is relevant may be excluded "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or by considerations of undue delay, or needless

9

presentation of cumulative evidence." Prejudice is "undue" if it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Webb*, 387 S.W.3d at 328 (quoting *Carter v. Hewitt*, 617 F.2d 961, 972 (3d. Cir. 1980)) (internal quotation marks omitted). When determining whether a piece of evidence is admissible under KRE 403, a trial court must consider three factors: first, how probative the evidence is; second, the "probable impact of specified undesirable consequences;" and third, whether the second factor outweighs the first. *Id.* at 326 (citing *Partin v. Commonwealth*, 918 S.W.2d 219, 222 (Ky. 1996), *overruled on other grounds by Chestnut v. Commonwealth*, 250 S.W.3d 288 (Ky. 2008)). As noted above, we review the trial court's findings for an abuse of discretion. *Id.* (citation omitted).

Here, the trial court found that the receipt was relevant, as discussed above. It also found that it was not prejudicial because "evidence that someone has done something legal in the past is not prejudicial to someone." The trial court's justification is partially erroneous; legal actions *can* nonetheless sometimes be prejudicial. That truth aside, it is unlikely that an old receipt for the sale of copper wire would "arouse a sense of horror" in a jury, nor "provokes its instinct to punish." *Webb*, 387 S.W.3d at 328 (quoting *Carter*, 617 F.2d at 972). Accordingly, the danger of undue prejudice to Henderson was likely minimal. Because this danger was minimal while the evidence was

probative, we must hold that the trial court did not abuse its discretion by finding that the copper sales receipt was admissible.

## IV.    CONCLUSION

Finding no abuse of discretion by the trial court in its rulings, we affirm Henderson's convictions.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Aaron Reed Baker
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Perry Thomas Ryan
Assistant Attorney General