RENDERED: SEPTEMBER 27, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1167-ME

D.B.                                                 APPELLANT


           APPEAL FROM JEFFERSON CIRCUIT COURT
v.                     FAMILY DIVISION
           HONORABLE ANGELA JOHNSON, JUDGE
           ACTION NO. 20-J-502651-001


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; JEFFERSON
COUNTY ATTORNEY; A.C.; AND
N.B., A CHILD                                   APPELLEES

AND

NO. 2023-CA-1169-ME

D.B.                                                 APPELLANT


           APPEAL FROM JEFFERSON CIRCUIT COURT
v.                     FAMILY DIVISION
           HONORABLE ANGELA JOHNSON, JUDGE
           ACTION NO. 20-J-502651-002


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND

FAMILY SERVICES; JEFFERSON
COUNTY ATTORNEY; A. C.; AND N.
B., A CHILD                                                                    APPELLEES

AND

NO. 2023-CA-1452-ME

D.B.                                                                                      APPELLANT

                          APPEAL FROM JEFFERSON CIRCUIT COURT
v.                        FAMILY DIVISION
                          HONORABLE ANGELA JOHNSON, JUDGE
                          ACTION NO. 20-J-502652-001

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; D.C.;
JEFFERSON COUNTY ATTORNEY;
AND M.C., A CHILD                                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND MCNEILL, JUDGES.

MCNEILL, JUDGE:  This is the second appeal in this dependency, neglect, or

abuse ("DNA") action out of Jefferson Circuit Court.  In the prior appeal, D.B.

("Mother") argued the circuit court failed to make written findings that her

children were abused or neglected. We remanded for the court to enter "new orders which properly reflect that court's findings of fact and conclusions of law based upon the evidence presented at the adjudication hearing." *D.B. v. Jefferson Cnty. Attorney*, No. 2021-CA-0178-ME, 2022 WL 1122507, at \*5 (Ky. App. Apr. 15, 2022). Mother argues the findings are still inadequate. We affirm.

## BACKGROUND

Mother gave birth to N.B. in March 2017 and M.C. in June 2019. In February 2020, the Cabinet for Health and Family Services ("Cabinet") filed dependency, neglect, or abuse petitions in Jefferson Circuit Court alleging:

> - Child Protective Services ("CPS") received reports of neglect or abuse to both children by Mother on July 31, 2019, September 9, 2019, November 15, 2019, and December 30, 2019.
>
> - Mother admitted to a Cabinet representative "to being incoherent due to alcohol use while in a caretaking role."
>
> - Mother admitted to taking her children to gatherings where she planned on drinking and others had allegedly been intoxicated.
>
> - Mother reported that D.C., [M.C.]'s biological father ("Father 2"), had attempted to take her car keys away to stop her from driving while under the influence of alcohol.
>
> - Father 2 reported that Mother and an unknown man were drinking, and Mother had left the children in the man's care to buy alcohol.

- In February 2020, Mother admitted that a shooting occurred at Mother's home while at least one of the children was present and in the unknown man's care.

- Father 2 reported that (a) Mother attacked him in the parking lot of Norton Children's Hospital in December 2019, (b) he had a domestic violence order ("DVO") against Mother, (c) Mother had been charged with violation of a DVO, (d) Mother possessed a firearm, and (e) Mother had assaulted him and chased him in her vehicle and that he feared for his life.

- (a) Maternal grandmother had custody of Mother's three older children and Mother only saw the children in a therapeutic setting, (b) the older children were removed from Mother in 2015 due to domestic violence and substance abuse, (c) another child of Mother's, B.B., had died in 2014 while in Mother's care, and (d) Mother admitted to using cocaine and heroin "around the time of B.B.'s death."

- [M.C.]'s physician contacted the Cabinet and reported (a) [M.C.]'s weight was concerning and needed medical supervision, (b) Mother had missed a doctor's visit, (c) [M.C.] had a lung condition that made it difficult to breathe due to her elevated weight, and (d) [N.B.] was non-verbal and could not communicate by writing.

- The Cabinet alleged that Mother's CPS history showed pending allegations in this case, along with substantiated allegations from the 2015 case. Additionally, her criminal history showed convictions for speeding, driving under the influence, alcohol intoxication, and disorderly conduct.

*D.B.*, 2022 WL 1122507, at *1.

Relevant to the appeal, the circuit court held an adjudication hearing on November 17, 2020. Testifying for the Cabinet, Sheila Williams ("Williams")

said she first contacted Mother after receiving several reports of Mother being intoxicated while caring for the children. According to Williams, Mother admitted the allegations were true, but did not seem concerned. Williams showed Mother a photo, allegedly taken at a party, which appeared to depict Mother passed out on the floor with M.C. between her legs. Mother acknowledged it was her in the photo and that she was intoxicated, but did not see anything wrong with the situation because others at the party were not passed out.

Williams testified that she questioned Mother about another incident where someone shot a gun inside Mother's home while M.C. was present. Mother conceded there had been a shooting, but she was not there. She had gone to the store to buy more alcohol and had left the child with someone who had also been drinking.

Williams said Mother's attitude towards the two incidents was very nonchalant. Mother laughed when Williams showed her the photo of herself passed out, responding that drinking is legal and it was a birthday party. As to the shooting incident, she claimed it was not her fault because she was not there.

Mother's childhood friend, Cassandra Velasco ("Velasco") testified next. Velasco stated she lived down the street from Mother at the time of the allegations and would see her and the children almost daily. In 2019, she became concerned Mother's drinking was endangering the children. Velasco testified to an

incident at a birthday party for her husband where Mother was drunk and drove home with the children in the car.

Velasco claimed she was the one who took the photo of Mother passed out with M.C. between her legs. She was hosting a cookout and fell asleep in the evening. She woke up to M.C. crying, lying between Mother's legs. Velasco tried to wake Mother but could not. She took the photo to document the incident because it was not the first time she had concerns about Mother drinking while in a caretaking role.

She also testified concerning the shooting incident. Velasco stated she was at Mother's house and overheard her talking to an unknown man on the phone. Mother told the man on the phone that a guy was coming over to her house in a few minutes with a large sum of money and asked the unknown man if he would rob him and they could split the money. Velasco left and ten minutes later received a call from her friend saying he had been robbed at Mother's house. She returned and found a bullet on the floor and M.C. in her swing in a nearby room. Mother returned shortly after from the liquor store.

Mother disputed all the allegations in the petition. She denied making any admissions to Williams and did not believe she had a problem with alcohol. She claimed she had never drunk in front of her children. According to Mother, Williams and Velasco were not telling the truth.

At the close of the hearing, the circuit court made the following oral findings from the bench:

> I'm finding that [Mother] was intoxicated while in a caretaking role, thereby placing these children at risk. I am finding that she has left these children in the care of also persons who have been drinking, and I am finding that she has not adequately addressed her issues with alcoholism. . . .
>
> That she passed out while in a caretaking role, and I think that satisfies, specifically, part of the statute. There is specific language in the statute and I just need to pull it up. Engages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child including but not limited to parental incapacity due to a substance use disorder. I find that she has, in fact, engaged in a pattern of conduct – drinking – that rendered her incapable of caring for the immediate and ongoing needs of [M.C.] and [N.B.], including but not limited to parental incapacity – thereby, the passing out with the child in-between her legs – due to a substance use disorder. She has a substance use disorder and it's alcoholism. We've heard so much about it during this hearing that she abuses alcohol. So, those are my findings, specifically.

However, the court's written calendar orders, entered the same day, simply stated, "the [court] finds by a preponderance of the evidence that the allegations in the petition are true." Subsequently, the court entered dispositional orders leaving the children in their current placements and requiring Mother to engage in a "protective parenting" program.

-7-

Mother appealed, arguing the circuit court's order lacked written findings of fact as required under CR[1] 52.01 and *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011). We reversed the adjudication orders and remanded for the circuit court to enter "new orders which properly reflect that court's findings of fact and conclusions of law based upon the evidence presented at the adjudication hearing." *D.B.*, 2022 WL 1122507, at *5.

On remand, the circuit court entered a new calendar order which provided:

> As ordered by [the Kentucky Court of Appeals], the [Court] finds by the preponderance of the evidence that the allegations in the petition are true. The [Court] specifically finds that [Natural Mother], [D.B.], was intoxicated while in a caretaking role of the children, thereby placing the children at risk; that she has left the children in the care of people who have also been drinking; that she has not adequately addressed her issues with alcoholism, rendering her incapable of caring for the immediate and ongoing needs of [M.C.] and [N.B.].[2]

This appeal followed.

---

[1] Kentucky Rules of Civil Procedure.

[2] This order was entered in Nos. 20-J-502651-001 and 20-J-502651-002, the juvenile actions concerning N.B. At the request of Mother, the circuit court subsequently entered a substantially similar order specifically referencing M.C. in her companion case, No. 20-J-502652-001. This order clarified that the risk Mother's drinking created for the children was the "risk of harm."

## STANDARD OF REVIEW

As this is a second appeal, our review is "limited to whether the trial court properly construed and applied the mandate." *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982). Thus, we will not review issues not raised in the first appeal or sent back to the trial court on remand.

## ANALYSIS

In this second appeal, Mother makes the following arguments: (1) the circuit court's findings of fact and conclusions of law are still insufficient; (2) the court's finding of neglect or abuse was clearly erroneous; (3) the court erred in finding Mother has a substance use disorder absent expert testimony; and (4) the court erred in permitting a non-party to participate in the adjudication hearing. We will address each in turn.

Mother argues the circuit court's findings are still insufficient under CR 52.01. Specifically, the court's order does not mention witnesses, or the evidence presented at the hearing. Mother claims "there was no evidence before the Court that N.B. was even present during the alleged 'passed out' episode." She also points to the lack of legal conclusions, "leaving the reader to wonder whether the children were neglected, abused, dependent, or none of the above."

CR 52.01 states: "In all actions tried upon the facts without a jury . . . . the court shall find the facts specifically and state separately its conclusions of

law thereon and render an appropriate judgment . . . ." On remand, the circuit court made the following findings:

> As ordered by [the Kentucky Court of Appeals], the [Court] finds by the preponderance of the evidence that the allegations in the petition are true. The [Court] specifically finds that [Natural Mother], [D.B.], was intoxicated while in a caretaking role of the children, thereby placing the children at risk; that she has left the children in the care of people who have also been drinking; that she has not adequately addressed her issues with alcoholism, rendering her incapable of caring for the immediate and ongoing needs of [M.C.] and [N.B.].

In a DNA action, the purpose of the adjudication hearing is to "determine the truth or falsity of the allegations in the complaint." KRS 620.100(3). "[A] determination of dependency, neglect, and abuse shall be made by a preponderance of the evidence." *Id.* Relevant to this appeal, KRS 600.020(1) defines an abused or neglected child as follows:

> (1) "Abused or neglected child" means a child whose health or welfare is harmed or threatened with harm when:
>
>> (a) His or her parent, guardian, person in a position of authority or special trust, as defined in KRS 532.045, or other person exercising custodial control or supervision of the child:
>>
>> . . .
>>
>>> 3. Engages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child, including but not limited to parental

incapacity due to a substance use disorder as
defined in KRS 222.005[.]

While the circuit court's findings could have been more detailed, we believe they are sufficient to satisfy CR 52.01 and our case law. The circuit court considered the truth or falsity of the allegations in the petition as required by KRS 620.100(3), finding that the allegations were true. It specifically found Mother "was intoxicated while in a caretaking role of the children, thereby placing the children at risk [of harm.]" It referenced evidence from the hearing, noting that "she has left the children in the care of people who have also been drinking." Based upon these findings, the court held Mother's drinking "render[ed] her incapable of caring for the immediate and ongoing needs of [M.C.] and [N.B.]." This language is directly from KRS 600.020(1)(a)3. Although it would be preferable for the circuit court to cite the statute, it made the necessary legal conclusion concerning abuse or neglect.

Mother faults the court for not mentioning witnesses or evidence from the hearing. Again, certainly, the court's findings could have been more specific, but neither CR 52.01 nor our case law requires them to be. She also claims, "there was no evidence before the Court that N.B. was even present during the alleged 'passed out' episode." However, KRS 600.020 permits a finding of abuse or neglect based on the risk of abuse or neglect alone. *See Z.T. v. M.T.*, 258 S.W.3d

-11-

31, 36 (Ky. App. 2008). Therefore, N.B.'s presence during a specific instance of abuse or neglect is immaterial.

Mother next argues the court's finding of abuse or neglect was clearly erroneous. "In a DNA action, the trial court has a great deal of discretion in determining whether the child is dependent, neglected, or abused." *B.B. v. Cabinet for Health and Family Services*, 635 S.W.3d 802, 807 (Ky. 2021) (citation omitted). "Under our standard of review, an appellate court is obligated to give a great deal of deference to the trial court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them." *Cabinet for Health and Family Services v. L.G.*, 653 S.W.3d 93, 102 (Ky. 2022) (internal quotation marks and citation omitted). "[I]n reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion." *B.C. v. B.T.*, 182 S.W.3d 213, 219-20 (Ky. App. 2005).

The circuit court's finding that M.C. and N.B. were abused or neglected was not clearly erroneous. The court found Mother's pattern of alcohol use rendered her incapable of caring for the immediate and ongoing needs of the children. *See* KRS 600.020(1)(a)3. "Needs of the child" are defined to include

"necessary food, clothing, health, shelter, and education[.]" KRS 600.020(41).

Substantial evidence from the hearing supported this finding.

Velasco testified to Mother passing out at a party while M.C. was between her legs. She took a photo of the incident because it was not the first time she had witnessed Mother drinking while in a caretaking role. Velasco tried to wake Mother but could not, so she had to care for the child. Velasco also said she first became concerned for the children when Mother told her she just wanted to drink all the time. She worried Mother was not feeding the children. Although Mother claimed N.B. was a picky eater, he would eat like he had not eaten for days when Velasco would cook for him.

Other testimony similarly showed that Mother's decisions while intoxicated in a caretaking role placed the children at risk of harm, as found by the court. Although not cited or referenced by the circuit court, the evidence also supported a finding the children were abused or neglected under KRS 600.020(1)(a)2., when a parent "[c]reates or allows to be created a risk of physical . . . injury as defined in this section to the child by other than accidental means[.]" Velasco said Mother drove home from a birthday party while intoxicated with the children in the car. She also testified that Mother orchestrated a robbery which led to a gun being fired off inside her home with M.C. in a nearby room. Williams testified that Mother admitted to the above incidents when questioned about them.

-13-

Mother denies the above testimony and challenges the credibility of Velasco. However, "the trial court, as the finder of fact, has the responsibility to judge the credibility of all testimony, and may choose to believe or disbelieve any part of the evidence presented to it." *Cabinet for Health & Fam. Servs. v. P.W.*, 582 S.W.3d 887, 896 (Ky. 2019) (citation omitted).

Mother also contends the circuit court erred in finding she had a substance use disorder absent expert testimony. Mother neglects to show how this issue is preserved for our review. She failed to include a preservation statement for this argument as required by RAP[3] 32(A)(4). She also failed to object to this issue at the hearing or in a motion to alter, amend, or vacate. "The rationale for the preservation rule is that a court . . . may not be found to be in error where it has not been given an opportunity to (1) rule on the issue or (2) correct any alleged error." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 312 (Ky. 2023) (internal quotation marks and citation omitted). We find this issue unpreserved and decline to address it. *See Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (internal quotation marks and citation omitted) ("An appellate court is without authority to review issues not raised in or decided by the trial court.").

Finally, Mother argues the circuit court erred in allowing the putative father of N.B., a nonparty, to participate in the adjudication hearing. "Generally, a

---

[3] Kentucky Rules of Appellate Procedure.

litigant may not raise on a subsequent appeal any question that *could have been raised* as well as those that were raised upon a former appeal." *Hampton v. Commonwealth*, 133 S.W.3d 438, 444 (Ky. 2004) (emphasis added). "[A]n extension of the core law-of-the-case doctrine is the rule that precludes an appellate court from reviewing not just prior appellate rulings, but decisions of the trial court which could have been but were not challenged in a prior appeal." *Brown v. Commonwealth*, 313 S.W.3d 577, 610 (Ky. 2010). "This is 'a type of waiver' that 'hinges . . . on the party's inaction in failing to raise the issue in a manner consistent with the court's general policy against piecemeal appeals.'" *St. Clair v. Commonwealth*, 451 S.W.3d 597, 613 (Ky. 2014) (citing *Brown*, 313 S.W.3d at 610). Because Mother could have raised this issue in her first appeal, but did not, it is waived.

## CONCLUSION

Based upon the foregoing, the orders of the Jefferson Circuit Court are affirmed.


ALL CONCUR.

BRIEF FOR APPELLANT:

Maureen Sullivan
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Michael J. O'Connell
Jefferson County Attorney

David A. Sexton
Special Assistant Attorney General
Assistant Jefferson County Attorney
Louisville, Kentucky